# IN THE UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | |
| --- | --- | --- |
| | : | |
| V. | : | 3:17-CR-00298-6-RDM |
| | : | |
| CARLOS SANTURTAN-TERAN | : | |

**BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

AND NOW comes Defendant, Carlos Santurtan-Teran, by and through his counsel, Matthew T. Comerford, Esquire, and files this Brief in Support of his Motion to Dismiss.

**Procedural History**

Pursuant to an Indictment filed in the Middle District of Pennsylvania on October 3, 2017, the Defendant is charged as a conspirator for his participation in manufacturing, distributing and possessing with intent to distribute marijuana in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(c) and 846. The named co-conspirators include Jose Luis Gonzalez, Sr., Jose Luis Gonzalez, Jr., Joevany L. Gonzalez, Carlos Roman, Alfredo Roman, Nelson Martin and Christian Madera. The conspiracy is alleged to have taken place from January of 2017 until October 3, 2017.

Undersigned counsel was appointed to represent the Defendant on January 13, 2020. Pursuant to the Court's Scheduling Order, Pre-Trial Motions are due on

or before February 10, 2020. Defendant submits the instant brief in support of his pretrial motions.

**Factual History**

On April 20, 2017, United States District Judge Stefan R. Underhill of the District Court of Connecticut granted an application permitting the interception of wire and electronic communications occurring over cellular telephone 860-626-3549. Subsequent applications were approved for the same phone number on May 18, 2017 and June 26, 2017. The target phone was being utilized by Luis Cirino a/k/a "Gordo", a known distributor of cocaine.

Pursuant to the above Title III Warrants which were approved by the District Court of Connecticut, conversations were intercepted between Cirino and Jose Luis Gonzalez, Sr. The intercepted communications relate to the distribution of cocaine and heroin in Connecticut and Pennsylvania.[1] This is a separate conspiracy from

---

[1] Search Warrant Affidavit prepared by Special Agent Michael A. Nowell: "11. Agents from DEA-New Haven, Connecticut are currently investigating a cocaine drug trafficking organization operating in Connecticut and Pennsylvania. As part of that investigation, DEA Agents in Connecticut sought and were granted a Federal Court Order to intercept the wire and electronic communications of Luis Cirino, a/k/a "Gordo". During that investigation, agents in Connecticut have learned that Cirino is receiving multi-kilogram quantities of cocaine from sources of supply in Puerto Rico. Agents also discovered that Cirino was communicating with Jose Luis Gonzalez, Sr., a resident of East Stroudsburg, Pennsylvania concerning illegal activities, including the distribution of cocaine."

2

that charged in this case. This case deals solely with conspiracy to distribute marijuana.

In large part, as a result of incriminating statements made by Jose Luis Gonzalez, Sr. on the Connecticut wire, the District Court of the Middle District of Pennsylvania approved interception of the phone number being utilized by Gonzalez, Sr. The Gonzalez, Sr. phone, a Verizon wireless cellular telephone bearing telephone number 570-807-6131 was subjected to interception from July of 2017 through October 21, 2017. During the above time period, phone calls are intercepted between Gonzalez Sr. and the Defendant. The intercepted calls between Gonzalez and the Defendant reveal the existence of a residence located in the state of Michigan where marijuana plants are being grown.[2] The Defendant's alleged participation in the "grow operation" consists of the installation of coolant towers at the target residence.

Ultimately, a Search Warrant is obtained for the property located at 6250 North Rogers Highway, Tecumseh, Michigan. The Affidavit prepared by DEA Agent Michael A. Nowell assigned to the Toledo Resident Office states:

> "Residence utilized by Jose Luis Gonzalez, Sr., Carlos Roman, and Alfredo Roman, 6250 North Rogers Highway, Tecumseh, Lenawee County, Michigan. During this investigation, Agents have learned that the residence to be searched is rented by Carlos Roman and

---

[2] The address of the residence in Michigan is 6250 North Rogers Highway, Tecumseh, Lenawee County, Michigan.

> Alfredo Roman and is used as a location to grow marijuana."

The Probable Cause Section in support of obtaining approval for the Search Warrant references several intercepted calls which reveal the existence of a marijuana "grow operation" located at the target property.[3] A Search Warrant is approved for 6250 North Rogers Highway, Tecumseh, Michigan on September 29, 2017 by United States Magistrate Judge Anthony P. Patti of the United States District Court for the Eastern District of Michigan. Ultimately, the Search Warrant is executed and a marijuana "grow operation" is discovered.[4]

The Defendant was not present at the property upon execution of the Search Warrant. The Defendant was taken into custody in the state of Michigan on November 6, 2017 and held as a result of the Indictment filed in the Middle District of Pennsylvania on October 3, 2017.

## Argument

The right to be tried in the appropriate venue is deeply-rooted and engrained in this nation's history, such that "[t]he proper place of colonial trials was so

---

[3] Pursuant to the Affidavit in support of the Search Warrant for the Michigan property, the following dates reference the "grow operation": July 23, July 27, July 28, August 4, August 28 and September 26.

[4] Pursuant to conversations with Assistant United States Attorney Todd Hinkley, a marijuana "grow operation" was discovered. However, at this point, counsel has not received an inventory of the items discovered or the persons responsible for execution of the Search Warrant.

important to the founding generation that it was listed as a grievance in the Declaration of Independence. *United States v. Auernheimer*, 748 F.3d 525, 532 (3d Cir. 2014) (citing Declaration of Independence para. 21 (U.S. 1776)). A Defendant has a Constitutional right to be tried where the alleged crime was committed. *United States v. Allen*, 2012 WL 4506547 *1 (D. V.I. 2012) (citing U.S. CONST. art. III § 2 cl 3l U.S. CONST. amend. VI; *United States v. Rodriguez-Moreno*, 526 U.S. 275, 278 (1999); *United States v. Pendleton*, 658 F.3d 299, 302-03 (3d Cir. 2011)). Trial in the district where the alleged crime was committed is also mandated under the Federal Rules of Criminal Procedure. *Id* at *2 (citing Fed. R. Crim. P. 18; *United States v. Perez,* 280 F.3d 318, 328-29 (3d Cir. 2002)). Where "congress has not designated venue in the relevant criminal statute," as is true in this case, a Court must undertake a two-part analysis. *Id*. (citing *Rodriguez-Moreno*, 526 U.S. at 279). First, the Court must identify the behavior that "constitutes the offense" by looking to the elements of the offense to determine the conduct "the Congress sought to prohibit." *Id*. (citing *United States v. Pendleton*, 2010 WL 427230 *3 (D. Del. 2010) (aff'd *Pendleton*, 658 F.3d 299); *Pendleton*, 658 F.3d at 304). Then the Court must find the location of the criminal acts. *Id*. Generally, offenses occurring in multiple districts can be prosecuted in any district in which the crime occurred. *Id*. (citing 18 U.S.C. § 3237(a)). "The Government bears the burden of proving venue by a preponderance of the

5

evidence[,] and venue must be proper for each count of the indictment." *Id*. at *3 (citing *United States v. Root*, 585 F.3d 145, 155 (3d Cir. 2009)). In ruling on the appropriate venue, venue must be narrowly construed. *Auernheimer*, 748 F.3d at 532-33. (citing *United States v. Johnson*, 323 U.S. 273, 276 (1944)).

Defendant is charged with a single count of Conspiracy to Distribute and Possess With Intent to Distribute Marijuna under 21 U.S.C. § 846. (Doc. 1). Specifically, the Indictment alleges underlying offenses in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). "Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." 21 U.S.C. § 846. Conspiracy, as charged, has three elements:

- That two or more persons agreed to (distribute, manufacture, etc.) a controlled substance.

- That the defendant was a party to or member of that agreement.

- That the defendant joined the agreement or conspiracy knowing of its objectives to (distribute, manufacture, etc.) a controlled substance and intending to join together with at least one other alleged conspirator to achieve that objective; that is, that and at least one other alleged conspirator shared a unity of purpose to achieve that objective.

Third Circuit Model Jury Instruction 21.846B.

Conspiracy is a continuing offense, and "venue can be established wherever a co-conspirator has committed an act in furtherance of the conspiracy." *Auernheimer*, 748 F.3d at 533 (citing *Perez*, 280 F.3d at 329; *accord Hyde v.*

6

*United States*, 225 U.S. 347, 356-67 (1912)). In determining venue, a court must "separate 'essential conduct elements' from 'circumstance elements.[5]'" *Id.* (quoting *Rodriguez-Moreno*, 526 U.S. at 280, n.4). Only "essential conduct elements" can provide the basis for venue. *Id.* (citing *United States v. Bowens*, 224 F.3d 302, 310 (4th Cir. 2000)). In assessing the essential conduct elements on a charge of conspiracy, the Court looks to the essential conduct elements of the underlying offense. *See id.* Here, the underlying offense is a violation of 18 U.S.C. § 841(a)(1). The essential conduct element of that offense is the manufacturing, distribution, possession with intent to distribute, etc., marijuana

The Government has not proffered any evidence which could lead to the conclusion that essential conduct elements of this offense occurred in the Middle District. No marijuana in this conspiracy ever entered the Middle District. Therefore, no marijuana was possessed in the Middle District. No marijuana was manufactured in the Middle District. No drugs marijuana was distributed in the Middle District. The only conduct that occurred in the Middle District whatsoever

---

[5] In a money laundering case in which the laundered money was generated by illegal drug sales in Missouri, but all acts constituting laundering occurred in Florida, the Supreme Court found that, while the existence of criminally generated proceeds was an element of the offense of money laundering, it was only a 'circumstance element' because it was "simply a fact that existed at the time the defendant performed her laundering acts." *Auernheimer*, 748 F.3d at 533 (citing *United States v. Cabrales*, 524 U.S. 1, 4-10 (1998); *Rodriguez-Moreno*, 526 U.S. at 280, n.4).

7

were phone calls between Defendant and Gonzalez, where Gonzalez was present in the Middle District, but Defendant was not. These phone calls provide evidence of a conspiracy, but do not establish essential elements of an offense. These calls discuss criminal activity occurring in Michigan. They do not discuss or evidence any criminal activity occurring in the Middle District. These phone calls are merely circumstance evidence, which, as discussed above, cannot give rise to venue. Furthermore, in regard to the conspiracy, no overt acts occurred in the Middle District. See, e.g., *Auernheimer*, 748 F.3d at 535 (Using the lack of overt acts in the charging venue in support of finding that venue was not proper in a conspiracy prosecution.). In *Auernheimer*, the Court found that venue was improper in New Jersey because there was a tangential effect on citizens of New Jersey, but there was no criminal conduct in New Jersey. *Id*. Here, there is neither activity or effect in the Middle District.

In *United States v. Perez*, the United States Court of Appeals for the Third Circuit, 280 Fed. 3rd 318 (2002), addressed the law with respect to venue. The question before the Court was whether proof of venue in a multi-district indictment for conspiracy is a determination of fact that must be submitted to a properly instructed jury upon Defendant's request. *Id.* at 329. The Court concluded that venue is first a question of law to be considered by the Trial Court and under appropriate circumstances is a question of fact to be submitted to the jury. In this

regard, the following language appears in the body of the Appellate Court's decision:

> "We take issue with the District Court's reading of our line of venue decisions to the extent that it concludes that venue can never pose an issue of fact that should be submitted to a jury. The Trial Judge is the gate keeper at trial, and in so acting, determines as to a matter of law whether there are sufficiently disputed issues of material fact to be decided by a jury." *Id.* at 332.

In *Perez*, the Defendants were charged with conspiracy to distribute and possess with intent to distribute methamphetamine, in the District of New Jersey and elsewhere in violation of 21 U.S.C. §846 and §841(a)(1). The case was comprised of a joint investigation conducted by both the DEA based in New Jersey and the Queens Narcotics Division of New York City regarding the distribution of methamphetamine. *Id.* at 323. The majority of the criminal conduct occurred in New York City.[6] However, pursuant to arrests made of individuals that were involved in the conspiracy, they began cooperating. They claimed that they had been working in the Del Rosario organization distributing crystal

---

[6] As stated above, *Perez* dealt with the distribution of methamphetamine. The Kingpin of the conspiracy was an individual by the name of Lirio Del Rosario. His apartment was located in New York City. Law enforcement conducted a traffic stop of co-conspirator seen coming from the Rosario residence which netted approximately 200 grams of methamphetamine. Further, the investigation revealed that methamphetamine was being smuggled through JFK airport. Finally, pursuant to a Search Warrant executed at the Rosario residence, approximately 400 kilograms of methamphetamine was discovered. All the above conduct occurred in the state of New York. *Id.* at 325.

9

methamphetamine for approximately two year in the states of New York and New Jersey. *Id.* at 325. Circuit Judge Ambro, writing for the majority, held that the Trial Court did not commit error in failing to instruct the jury on the issue of venue.[7] The opinion summarizes the law of venue as follows:

> "A Defendant in a criminal trial has a constitutional right to be tried in the district in which the crime was committed. Proper venue is a safeguard that is guaranteed twice in the Constitution. Article III, Section II, Paragraph 3 declares that the trial of all crimes . . . shall be by jury; and such trial shall be held in the state where the said crime shall have been committed . . . U.S. Const. Art. III, Section II, C.3. The Sixth Amendment to the Constitution provides that in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law. The government has the burden of proving that venue is proper. Moreover, pursuant to Federal Rule of Criminal Procedure 18, "except as otherwise permitted by statute or by these rules, the prosecution shall be had in a district in which the offense was committed." *Id.* at 328.

---

[7] The Circuit Court in *Perez* conducted a detailed analysis on the Defendant's failure to timely object on the issue of venue. Since the Defendant in our case is objecting to venue pretrial, the Court's analysis with respect to waiver is not applicable to the issue before this Court. However, with respect to the factual analysis on the issue of venue, the Court in *Perez* held "Here we have an unchallenged indictment that alleges a conspiracy in New Jersey, buttressed by trial testimony of two alleged co-conspirators that overt acts in furtherance of the conspiracy occurred in New Jersey. No countervailing evidence was introduced by the Appellants nor did they at or before trial challenge the Government's case in any way." *Id.* at 335.

10

The facts of the instant case are distinguishable from *Perez*. In *Perez*, although the majority of the criminal conduct occurred in the state of New York, the co-conspirators testified at trial that the distribution of methamphetamine also occurred in the state of New Jersey. *Id.* at 326. In our case, all of the criminal conduct occurred in the state of Michigan. The Defendant was never present in the state of Pennsylvania. The target residence is located in Michigan. The meetings between Gonzalez, Sr. and the Defendant occurred in Michigan. The Search Warrant is conducted in the state of Michigan. No co-conspirators connect the criminal conduct to the state of Pennsylvania. The only evidence linking the conspiracy to Pennsylvania are occasional phone calls that take place between Gonzalez, Sr. and the Defendant while Gonzalez, Sr. is in Pennsylvania. However, the vast majority of the phone calls between Gonzalez, Sr. and the Defendant occurred while both parties were outside the state of Pennsylvania. (See Defendant's Exhibit 1 – Intercepted Communications).

In a more recent decision, the United States Court of Appeals for the Third Circuit had the occasion to address the law on venue. *United States v. Renteria*, 903 F.3d 326 (2018). The Defendant was charged with conspiracy to distribute 500 grams or more of methamphetamine and on kilogram or more of heroin in violation of 21 U.S.C. §846. *Id.* at 328. After his conviction, he was sentenced to 153 months imprisonment and he appealed. The issue before the Court was

"Whether to adopt a reasonable foreseeability test to determine if venue has been laid properly in a conspiracy case under 3237(a)?" *Id.* at 329. The Court declined to do so because neither the text of the Constitution nor of 3237(a) requires it. *Id.* at 330.

In 18 U.S.C. §3237(a), Congress provided that continuing offenses, including conspiracy, can be "prosecuted in any district in which such offense was begun, continued or completed". We have further clarified that "in addition venue can be established wherever a co-conspirator has committed an act in furtherance of the conspiracy." *Id.* at 329.

In holding that venue was proper in the Eastern District of Pennsylvania, the Court stated that "although Renteria himself did not act in the Eastern District of Pennsylvania or direct any of his actions there, his co-conspirators sent methamphetamine to Kuc[8] there and directed phone calls to him there." *Id.* at 331. In the instant case, no distribution of marijuana occurs in the Middle District of Pennsylvania. Thus, the question becomes whether an occasional phone call with a co-conspirator who is physically present in Pennsylvania which reference the "grow operation" in Michigan is sufficient to establish venue in the Middle District of Pennsylvania? It is not. As a matter of law, the Indictment should be dismissed.

---

[8] Kuc was an undercover agent who infiltrated the drug conspiracy.

In light of the reasons stated above, dismissal of the Indictment is required. However, even if the Court finds that dismissal is not the appropriate remedy, Defendant asks that the Court alternatively order that venue be transferred to a District Court in Michigan. A Court may transfer venue of a case for trial to "another district for the convenience of the parties, any victim, and the witnesses, and in the interests of justice." Fed. R. Crim. P. 21(b). Factors to be considered in a motion to change venue under Rule 21(b) include the "residency of the defendant, location of possible witnesses, location of events likely to be in issue, location of documents and records likely to be involved, disruption of defendant's business, expense to the parties, location of counsel, relative accessibility of place of trial, docket conditions of each district, and any other special elements which might affect transfer." *United States v. Shimek*, 445 F.Supp. 884, 892 (M.D. Pa. 1978) (citing *Platt v. Minnesota Mining & Mfg. Co.*, 376 U.S. 240, 243-44 (1964)).

Here Defendant is a residence of Florida. His only alleged criminal conduct occurred in Michigan. The root of this case and all evidence which will be presented in this case stems from a grow house in Michigan. The relevant witnesses are in Michigan. The location of events – particularly the grow operation and search thereof – was in Michigan. It will be extremely expensive for evidence and witnesses to be transported from Michigan. Failure to transfer would be directly adverse to the interest of judicial economy. Therefore, even if the

Court does not dismiss the Indictment, the case should be transferred to a District Court in Michigan for Trial.

                                        Respectfully Submitted,

                                        */s/ Matthew T. Comerford*
                                        _____
                                        Matthew T. Comerford, Esq.
                                        Attorney for Defendant