THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,
                               : CRIMINAL NO. 3:17-CR-298
                               : (JUDGE MARIANI)
      v.

CARLOS SANTURTAN-TERAN,

    Defendant

## MEMORANDUM OPINION
### I. INTRODUCTION

Here the Court considers Defendant's Motion to Dismiss (Doc. 364) in which he moves for dismissal due to lack of venue. (*Id.* at 1.) Alternatively, he requests that the case be transferred pursuant to Federal Rule of Criminal Procedure 21(b). (*Id.*) Defendant Santurtan-Teran ("Defendant") is one of eight Defendants named in the October 3, 2017, Indictment charging Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances, that substance being marijuana, in violation of 21 U.S.C. § 846 and 21 U.S.C. § 841(a)(1) and (b)(1)(C). (Doc. 1.) The Indictment states that the illegal activity took place "[f]rom in or about January 2017 to on or about the date of this Indictment, within the Middle District of Pennsylvania, and elsewhere." (Doc. 1 at 1.) The Indictment also contains a forfeiture allegation. (*Id.* at 3.) Only Defendants Santurtan-Teran and Jose Luis Gonzalez Sr. have not pled guilty.

## II. BACKGROUND[1]

This case arises from communications intercepted in the course of the investigation of another conspiracy relating to the distribution of cocaine and heroin in Connecticut and Pennsylvania. As the result of a subsequent court-authorized wiretap in the Middle District of Pennsylvania for telephones used by Jose Luis Gonzalez, Sr., ("Gonzalez Sr.) during 2017, DEA agents intercepted phone calls between Gonzalez Sr., Defendant, and others. Through these calls, agents learned of a marijuana grow operation in Michigan. The communications demonstrate that Gonzalez Sr. was the main investor of the finances to set up the operation and directed the day to day operations over his telephone from Stroudsburg, Pennsylvania. (Doc. 366 at 3.) Defendant's alleged participation in the grow operation consists of the installation of coolant towers. (Doc. 365 at 3.)

At the Motion Hearing held on March 24, 2021, the Government presented one witness, Task Force Officer John Egan. Defendant did not call any witnesses. Pertinent to the disposition of the pending motion, Officer Egan testified about a series of communications involving Gonzalez Sr., Defendant Carlos Roman, and Defendant Santurtan-Teran wherein specifics regarding the Michigan grow operation were discussed. (Doc. 430 at 3.) For at least two calls, identified as Session 1348 and Session 1437, Gonzalez Sr. was located in the Middle District of Pennsylvania. (*Id.* at 4.)

---

[1] The background facts set out in the text are not disputed and are derived from the parties' briefs. (Docs. 365 at 2-4, 366 at 3-5, 429 at 1-4, 430 at 2-5.) Where a factual averment is made only by one party, specific citation to the record is provided.

At the close of the motion hearing, Defendant's counsel requested the opportunity to file a supplemental brief and Government counsel agreed to file a responsive brief. (Doc. 428 at 67, Hr'g Tr. 67:12-13, 15-17.) The parties timely filed the agreed-upon briefs. (Docs. 429, 430.) Therefore, the pending motion is ripe for disposition.

### III. ANALYSIS

As noted above, Defendant contends that dismissal is appropriate because venue is improper in the Middle District of Pennsylvania or, alternatively, the case should be transferred to a United States District Court in Michigan. Defendant's initial position is that the telephone calls where the Michigan grow operation was discussed and Gonzalez Sr. was on his cellular phone in the Middle District of Pennsylvania are insufficient to establish venue in the Middle District. The Government opposes the motion and argues that venue is proper in the Middle District of Pennsylvania because the telephone calls are overt acts in furtherance of the conspiracy charged in the Indictment.

The United States Constitution safeguards a defendant's right to proper venue in criminal trials. *See United States v. Baxter*, 884 F.2d 734, 736 (3d Cir. 1989). Both Article III and the Sixth Amendment require that a defendant's criminal trial take place in the state where the alleged crime occurred. *See* U.S. Const. art. III, § 2, cl. 3 ("[T]he trial of all Crimes ... shall be held in the State where the said Crimes shall have been committed."); U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall

have been committed."). Rule 18 of the Federal Rules of Criminal Procedure reflects these constitutional mandates and provides that "the government must prosecute an offense in a district where the offense was committed." *United States v. Cabrales*, 524 U.S. 1, 6 (1998); Fed. R. Crim. P. 18. Rule 18 additionally requires that the court "set the place of trial within the district with due regard for the convenience of the defendant, any victim, and the witnesses, and the prompt administration of justice." Fed. R. Crim. P. 18.

The Third Circuit explained in *United States v. Auernheimer*, 748 F.3d 525 (3d Cir. 2014), that

> Congress may prescribe specific venue requirements for particular crimes. [*United States v. Pendleton,* 658 F.3d 299, 303 (3d Cir. 2011)]. Where it has not, . . . we must determine the crime's *locus delicti. Id.; see also Black's Law Dictionary* 1025 (9th ed.2009) (defining *locus delicti* as the "place where an offense was committed"). "[T]he locus delicti must be determined from the nature of the crime alleged and the location of the act or acts constituting it." *United States v. Anderson,* 328 U.S. 699, 703, 66 S.Ct. 1213, 90 L.Ed. 1529 (1946); *accord United States v. Rodriguez–Moreno,* 526 U.S. 275, 279, 119 S.Ct. 1239, 143 L.Ed.2d 388 (1999); *Cabrales,* 524 U.S. at 6–7, 118 S.Ct. 1772. To perform this inquiry, we "must [1] initially identify the conduct constituting the offense ... and then [2] discern the location of the commission of the criminal acts." *Rodriguez–Moreno,* 526 U.S. at 279, 119 S.Ct. 1239. Venue should be narrowly construed. *Johnson,* 323 U.S. at 276, 65 S.Ct. 249.
>
> Continuing offenses, such as conspiracy, that are "begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed." 18 U.S.C. § 3237(a). In the context of a conspiracy charge, "venue can be established wherever a co-conspirator has committed an act in furtherance of the conspiracy." [*United States v. Perez,* 280 F.3d 318, 329 (3d Cir. 2002)]; *accord Hyde v. United States,* 225 U.S. 347, 356–67, 32 S.Ct. 793, 56 L.Ed. 1114 (1912).

*Auernheimer*, 748 F.3d at 532-33.

As noted in *United States v. Caldwell*, 16 F.3d 623, (5th Cir. 1994), the Supreme Court has upheld the application of the venue rule regarding conspiracy, "even where it permits trial against defendants in a district they never even set foot in prior to trial." *Id.* at 624 (citing *Hyde v. United States,* 225 U.S. 347, 362 (1912); *see also United States v. Rommy*, 506 F.3d 108, 120 (2d Cir. 2007). It is widely accepted that overt acts for a conspiracy can include telephone calls. As stated in *Rommy*,

> [i]t is beyond question that telephone calls can constitute overt acts in furtherance of a conspiracy. *See United States v. Smith,* 198 F.3d [377, 382 (2d Cir. 1999)]; *United States v. Naranjo,* 14 F.3d [145, 147 (2d Cir. 1994)]; *United States v. Friedman,* 998 F.2d 53, 57 (2d Cir.1993). In cases involving telephone calls between co-conspirators in different districts, we have ruled that venue lies "in either district as long as the calls further the conspiracy." *United States v. Smith,* 198 F.3d at 382. In such circumstances, the direction of the call is irrelevant to venue. *Id.*

*Rommy*, 506 F.3d at 119–20;  *see also United States v. Barnes,* 681 F.2d 717, 724 (11th Cir.), *reh'g denied,* 694 F.2d 233 (11th Cir.1982), *cert. denied,* 460 U.S. 1046 (1983) (drug trafficking crime "is 'committed' for venue purposes both in the district where the call was made and in the district where the call was received."); *accord United States v. Kim,* 246 F.3d 186, 193 n. 5 (2d Cir.2001) (observing that phone call "to or from" a district can establish venue in that district as to any member of conspiracy); *see also United States v. Cannistraro*, 800 F. Supp. 30, 45 (D.N.J. July 22, 1992).

Defendant acknowledges that, in a conspiracy case, "'venue can be established wherever a co-conspirator has committed an act in furtherance of the conspiracy'" (Doc. 365

at 6 (quoting *Auernheimer*, 748 F.3d at 533), and agrees with the Government "that a single phone call can qualify as an overt act" (Doc. 429 at 4). Despite these acknowledgements, Defendant maintains that the Government is incorrect that a single phone call "can give rise to venue where there is no conspiracy to commit a crime or part of a crime in the district where the case had been brought." (*Id.* at 4-5.)

In his supplemental brief, Defendant's conclusion is unsupported by citation or further argument. However, Defendant makes a similar claim in his initial brief, relying on *Auernheimer* to support of his argument that the Government has not shown that venue is proper in the Middle District of Pennsylvania because it has not shown that "essential conduct elements" of the underlying offense of 18 U.S.C. § 841(a)(1) occurred in the Middle District. (Doc. 365 at 7-8.)

> In determining venue, a court must "separate 'essential conduct elements' from 'circumstance elements.'" [*Auernheimer*, 748 F.3d at 533] (quoting *Rodriguez-Moreno*, 526 U.S. at 280, n.4). Only "essential conduct elements" can provide the basis for venue. *Id.* (citing *United States v. Bowens*, 224 F.3d 302, 310 (4thCir. 2000)). In assessing the essential conduct elements on a charge of conspiracy, the Court looks to the essential conduct elements of the underlying offense. *See id.* Here, the underlying offense is a violation of 18 U.S.C. § 841(a)(1). The essential conduct element of that offense is the manufacturing, distribution, possession with intent to distribute, etc., marijuana.

(Doc. 365 at 7.)

Defendant's reliance on *Auernheimer* for the proposition that venue is dependent on whether an essential conduct element of the underlying drug charge (21 U.S.C. § 841(a)(1) and (b)(1)(C)) took place in the Middle District of Pennsylvania is misplaced in that he

6

misapprehends a key aspect of the venue analysis set out therein. In *Aurenheimer*, the defendant was charged with conspiracy to violate the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030(a)(2)(C) and (c)(2)(B)(ii) and the District Court determined that venue was proper in New Jersey as a matter of law. 748 F.3d at 531-32. As background to the analysis of whether the District Court had properly determined that venue was proper in New Jersey, the Circuit Court included a discussion of how elements of an offense contained in an indictment should be considered for venue purposes and highlighted a distinction between "essential conduct elements" and "circumstance elements" which the Supreme Court had identified in *Rodriguez*, 526 U.S. at 280 & n.4. 748 F.3d at 533. As explained in *Auernheimer*, the former are to be considered in the venue inquiry and the latter are not--"[o]nly essential conduct elements provide the basis for venue." 748 F.3d at 533 (quoting *Bowen*, 224 F.3d at 310).[2]

Defendant is correct that *Auernheimer* distinguished essential conduct elements and circumstance elements. However, he is mistaken that the Circuit Court directed that "[i]n assessing the essential conduct elements on a charge of conspiracy, the Court looks to the essential conduct elements of the underlying offense." (Doc. 365 at 7 (citing *Auernheimer*, 748 F.3d at 533).) *Auernheimer* did not conclude (1) that the essential conduct elements for a charge of conspiracy are the essential conduct elements of the underlying charge and

---

[2] While the distinction between the two types of elements is not crystal clear, the delineation is not dispositive in this case. For the reasons discussed in the text, the Court need not further assess the essential conduct elements of the underlying drug charge in this case.

(2) that venue was limited to the essential conduct elements of the underlying charge. On the contrary, *Auernheimer* directed that "[v]enue would be proper in any district where the [underlying] violation occurred **OR** wherever any of the acts in furtherance of the conspiracy took place." *Id.* (citing *Perez*, 280 F.3d at 329, *Rodriguez-Moreno*, 526 U.S. at 281-82 (citing *Hyde*, 225 U.S. at 356-57)).

Accordingly, the Circuit Court first proceeded to determine the essential conduct elements of the underlying CFAA violation. *Id.* The Circuit Court noted that "[i]n the indictment and at trial, the Government identified the nature of the conduct constituting the offense as the agreement to commit a violation of the CFAA in furtherance of a violation of New Jersey's computer crime statute, N.J. Stat. Ann. § 2C:20-31(a)." 748 F.3d at 533. After concluding that the CFAA essential conduct elements did not occur in New Jersey and thus, the CFAA could not confer venue, the Circuit Court turned to consideration of whether the New Jersey statute's essential conduct elements could do so and arrived at the same conclusion. *Id.* at 534. *Auernheimer* then separately considered whether the overt acts alleged in the indictment regarding the conspiracy could confer venue and concluded that neither co-conspirator performed an overt act in furtherance of the conspiracy in New Jersey. *Id.* at 535. Because neither an "essential conduct element" of the CFAA claim nor any overt act in furtherance of the conspiracy occurred in New Jersey, the Circuit Court concluded that venue was improper in New Jersey. *Id.*

The foregoing discussion indicates that Defendant is incorrect that the venue inquiry in this case is confined to the question of what essential conduct elements under 21 U.S.C. § 841(a)(1) and (b)(1)(C) occurred in the Middle District of Pennsylvania. Rather, the rules governing the establishment of venue in the context of a conspiracy charge are appropriately considered here independent of the essential conduct elements of the underlying drug charge.

Considering the relevant legal framework for venue based on a conspiracy charge, disposition of the pending motion depends on the question of whether overt acts in furtherance of the conspiracy provide a basis for venue. It is undisputed that phone calls between Gonzalez Sr. and co-conspirators discussing various aspects of the conspiracy occurred when Gonzalez Sr. was physically located in the Middle District of Pennsylvania. It is also undisputed that phone calls are overt acts in furtherance of a conspiracy. Therefore, pursuant to the relevant caselaw cited above, it is undisputed that overt acts in furtherance of the conspiracy at issue occurred in the Middle District of Pennsylvania. Because overt acts in furtherance of the conspiracy charged in the Indictment occurred in the Middle District, venue is proper in this Court and Defendant's Motion to Dismiss (Doc. 364) based on lack of venue is properly denied.

Turning now to consider Defendant's assertion that the Court should transfer this case to Michigan because venue here is inappropriate and inefficient (*see, e.g.*, Doc. 429 at 5), the Court will assess whether to exercise its discretion to transfer venue.

Pursuant to Federal Rule of Criminal Procedure Rule 21(b), "Upon the defendant's motion, the court may transfer the proceeding, or one or more counts, against that defendant to another district for the convenience of the parties, any victim, and the witnesses, and in the interest of justice." The Court of Appeals for the Third Circuit considered transfer of venue in *In re U.S.*, 273 F.3d 380 (3d Cir. 2001:

> In *Platt v. Minnesota Mining & Mfg. Co.*, 376 U.S. 240 (1964), a criminal antitrust case, the Supreme Court enumerated ten factors that should be considered by a court in deciding whether to transfer a case. They are:
>
>> (1) location of [the] ... defendant; (2) location of possible witnesses; (3) location of events likely to be in issue; (4) location of documents and records likely to be involved; (5) disruption of defendant's business unless the case is transferred; (6) expense to the parties; (7) location of counsel; (8) relative accessibility of [the] place of trial; (9) docket condition of each district ... involved; and (10) any other special elements which might affect the transfer.
>
> *Id.* at 243-44, 84 S.Ct. 769 (quotation omitted)

*In re U.S.*, 273 F.3d at 387–88. These factors are considered in both civil and criminal cases. *See, e.g., United States v. Broussard*, Crim. No. 3:16-CR-352, 2020 WL 3839643, at *3 (M.D. Pa. July 8, 2020).

Here Defendant is a Florida resident. Gonzalez Sr. is living in California but resided in the Middle District of Pennsylvania before his arrest on the current charges. Neither Santurtan-Teran nor Gonzalez Sr. have known current ties to Michigan. As to the location of possible witnesses, location of events likely to be in issue, location of documents and records likely to be involved, and expense to the parties, the Government avers that

> the evidence which is likely to be presented at trial concerns communications intercepted over the wire in which Santurtan-Teran is recorded consulting with Gonzaliz regarding the marijuana grow operation. Any witnesses to the trial are likely to be local law enforcement officers who were involved in the search of the grow house in Michigan. These witnesses will be subpoenaed and travel to the Middle District of Pennsylvania at government cost. Many involved in the grow operation who were located in Michigan was named in the Indictment, and none of these individuals have either remained in Michigan or are Michigan residents at this point. The physical evidence gathered from Michigan will be transported to the Middle District of Pennsylvania for trial and will be available for review by the defense.

(Doc. 430 at 10 (internal citations omitted).) Both Government's counsel and Defendant's counsel are local attorneys to Scranton, Pennsylvania. Scranton is accessible from all parts of the country with an airport serving the metropolitan area. Although the Court has not conducted a comparison of the docket condition in the districts involved, all Courts have experienced backlogs due to the COVID-19 pandemic and this Court is prepared to proceed to trial on this matter as soon as practicable. Considering other elements which might affect the transfer, Defendant is one of eight Defendants charged in the Indictment, six Defendants have pled guilty, and the Court is very familiar with this case. On balance, review of the relevant factors leads to the conclusion that Defendants' motion for transfer should be denied.

## IV. CONCLUSION

For the reasons set out above, Defendant's Motion to Dismiss (Doc. 364) will be

denied. An appropriate Order is filed simultaneously with this Memorandum Opinion.

_____
Robert D. Mariani
United States District Judge